**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis Alberto OSPINA, Luis Alfredo Ramos, Cornelio Valencia-Mena, Luis Miranda Barrios, George Allen, Defendants-Appellants.**

No. 86–3140.

United States Court of Appeals,
Eleventh Circuit.

Aug. 3, 1987.

Brent D. Shore, Jacksonville, Fla., for Ospina.

Ronald W. Maxwell, Jacksonville, Fla., for Barrios and Ramos.

Gary A. Benson, Jacksonville, Fla., for Valencia-Mena.

Ernst Mueller, Asst. U.S. Atty., Jacksonville, Fla., for U.S.

David Rothman, (Court-appointed), Thornton Rothman & Moreno, Miami, Fla., for Allen.

Before RONEY, Chief Judge, EDMONDSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Luis Alberto Ospina, Cornelio Valencia-Mena, Luis Alfredo Ramos, Luis Miranda Barrios, and George Allen appeal their convictions for knowingly possessing and causing to be possessed marijuana on board a vessel of the United States and on board a vessel subject to the jurisdiction of the United States, with intent to distribute a quantity of marijuana in excess of 50 kilograms in violation of the Marijuana on the High Seas Act of 1980, 21 U.S.C.A. §§ 955a(a), 960, and 18 U.S.C.A. § 2. On appeal, all five defendants argue that a mistrial should have been granted because of an alleged variance between the indictment and the evidence adduced at trial. Defendants Ospina, Valencia-Mena, Ramos and Barrios allege two additional errors of the district court: (1) denial of their motions *in limine* to exclude other acts evidence under Fed.R.Evid. 404(b), and (2) denial of their motions for judgment of acquittal for insufficient evidence pursuant to Fed.R.Crim.P. 29. We affirm.

## I. FACTS

On October 1, 1985, the United States Coast Guard cutter TANEY intercepted in international waters, approximately 300 miles off the coast of Cape Hatteras, the tug SEA MAID I and the barge GUZZETTA 100, which was connected to the tug by a 200-yard towline. The Coast Guard officers boarded the SEA MAID I on October 3, with consent of the master, defendant Allen, who said that the tug was of Honduran registry. The TANEY sought verification, through Coast Guard and diplomatic channels, of the SEA MAID I's asserted Honduran registry. The Honduran Government refuted the tug's registry based on the registration numbers that Allen had provided. The following day, the Coast Guard officers boarded both vessels without consent, treating the vessels as stateless. The Coast Guard officials who boarded the barge found documentation in-

dicating its United States registry and approximately 165,000 pounds of marijuana contained within the GUZZETTA 100's hold. No contraband was found aboard the tug.

The indictment on which the defendants were tried charges them with possession of marijuana "on board a vessel subject to the jurisdiction of the United States."[1] The district court instructed the jury that in a section 955a case, a vessel is subject to the jurisdiction of the United States if it is without nationality or the government of foreign registration has consented to the assertion of United States jurisdiction.

## II. THE MARIJUANA ON THE HIGH SEAS ACT

A Honduran official testified on the third day of trial that the SEA MAID I was Honduran and that the Government of the Honduras consented to the prosecution. The defendants argue that this is a section 955a, subsection (a) indictment, a separate crime from a subsection (c) case which involves consent. Thus, they contend: (1) the consent evidence constituted a "constructive amendment" of the indictment resulting in conviction for an uncharged offense, namely, 21 U.S.C.A. § 955a(c), in violation of the Fifth Amendment right to be tried on the charges presented by the Grand Jury, and (2) the consent evidence altered the jurisdictional element pleaded in the indictment, i.e., the tug was "stateless," resulting in a prejudicial variance from the indictment, which denied them a fair trial. The defendants claim prejudice because their defense to the stateless vessel charge was that the SEA MAID I was a Honduran registered vessel, not a stateless

vessel "subject to the jurisdiction of the United States" under section 955a(a).

Subsection (a) of 21 U.S.C.A. § 955a, refers to a vessel "subject to the jurisdiction of the United States":

(a) It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

Subsection (c) of 21 U.S.C.A. § 955a, refers to "any vessel within the customs waters of the United States":

(c) It is unlawful for any person on board any vessel within the customs waters of the United States to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

A vessel "subject to the jurisdiction of the United States" is further defined as including "a vessel without nationality." 21 U.S.C.A. § 955b(d). Nations may designate "customs waters of the United States" around a specific vessel by "treaty or other arrangement," including informal consent. 19 U.S.C.A. § 1401(j).

This Court has consistently held that the subsections of 21 U.S.C.A. § 955a state separate offenses. *See United States v. Luis-Gonzalez*, 719 F.2d 1539, 1547–48 (11th Cir.1983) (separate offenses for separate sentences); *United States v. Vidal-Hungria*, 794 F.2d 1503, 1510 (11th Cir. 1986) (separate offenses for second prosecution). In these cases, the Court has relied on Congress' purpose in enacting section 955a "to prohibit all acts of illicit trafficking in controlled substances on the high

---

1. INDICTMENT

The Grand Jury charges that:
COUNT ONE

On or about October 4, 1985, on the high seas on board a vessel of the United States, namely a barge named the "Guzzetta 100", and on board a vessel subject to the jurisdiction of the United States, namely the "Sea Maid I",

 GEORGE ALLEN
 LUIS ALBERTO OSPINA,
 LUIS ALFREDO RAMOS,
 LUIS MIRANDA BARRIOS ...

CORNELIO VALENCIA MENA ...
defendants herein, did possess and cause to be possessed, with intent to distribute, a quantity of marijuana weighing in excess of 50 kilograms, a Schedule I controlled substance, and following their arrest were brought to and entered the United States at Jacksonville, Florida, in the Middle Judicial District of Florida, in violation of Title 21, United States Code, Sections 955a(a) and 960, and Title 18, United States Code, Section 2.

seas which the United States can reach under international law." H.R.Rep. No. 96–323, 96th Cong., 1st. Sess. 11 (1979). *See Luis-Gonzalez,* 719 F.2d at 1547; *Vidal-Hungria,* 794 F.2d at 1510. Thus, 21 U.S.C.A. § 955a is broadly construed in order to effectuate its purpose. *United States v. Correa,* 750 F.2d 1475, 1480 (11th Cir.1985).

■ The decision in this case is controlled by *United States v. Gonzalez,* 776 F.2d 931 (11th Cir.1985). In *Gonzalez,* this Court held that *"[i]t is misleading ... to consider that consent [is] an element of the offense;* rather, it is a diplomatic requisite illustrating the international partnership that ensures the rule of law on the high seas." *Id.* at 940 (emphasis in original). Finding that "Congress likely believed that obtaining consent would not unduly hinder enforcement efforts," *id.,* the *Gonzalez* Court further held that consent does not create a notice problem. *Id.* at 941. In so holding, the Court stated:

> Those embarking on voyages with holds laden with illicit narcotics, conduct which is contrary to laws of all reasonably developed legal systems, do so with the awareness of the risk that their government may consent to enforcement of the United States' laws against the vessel.

*Id.*

Assuming, without specifically so deciding, that the defendants here have standing to challenge the admission of the consent evidence, *see United States v. Williams,* 617 F.2d 1063, 1090 (5th Cir.1980) (*en banc*) (consent rights under international law belong to sovereign nations, rather than to individuals); *Gonzalez,* 776 F.2d at 940 n. 14 (consent is a courtesy to our neighbor states and not a courtesy to drug smugglers), we hold that the convictions here are not constitutionally infirm. The district court acted within its discretion in admitting the evidence of the Honduran Government's consent and in denying the defendants' motions for mistrial.

*First,* the defendants' "constructive amendment" argument is unavailing. *Gonzalez* clearly establishes that consent is not an element in a section 955a case.

Therefore, defendants cannot prevail under the argument that a defendant has the "substantial right to be tried only on charges presented in an indictment returned by a grand jury," *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960), and that a conviction obtained on an "extraneous element" defeats this substantial right. *United States v. Bizzard,* 615 F.2d 1080, 1082 (5th Cir.1980), *cert. denied,* 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982). *See also United States v. Fitapelli,* 786 F.2d 1461, 1463–64 (11th Cir.1986) (proof at trial of an uncharged jurisdictional theory).

*Second,* since *Gonzalez* also holds that consent does not create a notice problem in a section 955a case, the defendant's variance argument cannot prevail. In *United States v. Ramos,* 666 F.2d 469 (11th Cir. 1982), this Court stated:

> A variance warrants reversal solely if it is prejudicial, meaning that it affects a defendant's substantial rights, 'either by insufficiently informing him of the charges against him such that he is taken by surprise and prevented from presenting a proper defense, or by affording him insufficient protection against reprosecution for the same offense.' *United States v. Juarez,* 573 F.2d 267, 278 (5th Cir.1978).

*Id.* at 477. Although it might be better practice for the Government to plead in the indictment each of the section 955a subsections where the vessel's registry is unclear, the convictions in this case must stand. *See, e.g., United States v. Knight,* 705 F.2d 432 (11th Cir.1983).

In any event, regardless of the registry of the SEA MAID I, a reasonable trier of fact could find that the barge GUZZETTA 100 was a "vessel of the United States" under 21 U.S.C.A. § 955a(a). The marijuana was found on the barge. The defendants had constructive possession of the contraband aboard the GUZZETTA 100 and were constructively present on the barge for purposes of jurisdiction. *See United States v. Knight,* 705 F.2d 432 (11th Cir. 1983); *United States v. Brantley,* 733 F.2d

1429 (11th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985).

## III. OTHER ACTS EVIDENCE

The defendants Ospina, Valencia-Mena, Ramos and Barrios argue that the district court abused its discretion in denying their motions *in limine* to preclude other acts evidence under rule 404(b) of the Federal Rules of Evidence.

■ Under rule 404(b), evidence of extrinsic acts, although inadmissible as proof of character, may be introduced for purposes such as proof of intent or absence of mistake or accident. Fed.R.Evid. 404(b). For evidence of an extrinsic act to be admissible as proof of intent, it must meet a two-prong test. *First,* it must require the same intent as the charged offense and the jury must be able to find that the defendant committed the extrinsic act. *Second,* the evidence must possess probative value that is not substantially outweighed by its undue prejudice. *United States v. Glen-Archila,* 677 F.2d 809, 816 & n. 19 (11th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 137 (1982).

■ The Government's similar acts evidence showed that these four defendants, crew members of the SEA MAID I, had been either convicted or deported for previously being aboard another vessel containing substantial quantities or residue of marijuana. Under the *Glen-Archila* standard, the district court properly exercised its discretion in allowing the jury to consider testimony concerning the defendants' act of being aboard a marijuana vessel.

## IV. SUFFICIENCY OF EVIDENCE

Ospina, Valencia-Mena, Ramos and Barrios contend that the district court erred in denying their motions for judgment of acquittal. The crew members argue, essentially, that they were "merely present" on the SEA MAID I, rather than knowingly involved in transporting the 165,000 pounds of marijuana stored on the barge and therefore, there was insufficient evidence to convict them under section 955a(a).

The Court reviews the sufficiency of the evidence by asking whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. A jury is free to choose among reasonable constructions of the evidence. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) *(en banc), aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In making this determination, the Court must view the evidence and reasonable inferences therefrom in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Bell,* 678 F.2d at 549.

In *United States v. Cruz-Valdez,* 773 F.2d 1541 (11th Cir.1985) *(en banc), cert. denied sub nom. Ariza-Fuentes v. United States,* —— U.S. ——, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986), the Court stated that once it is established that the defendant was a crew member on a marijuana-laden vessel, the Government's burden to prove participation is "relatively light" and may be met by any one of a number of factors. *Id.* at 1547. The factors from which a reasonable jury could find guilty knowledge beyond a reasonable doubt include:

> a long voyage on a small vessel evincing a close relationship between captain and crew; suspicious behavior or diversionary maneuvers before apprehension; attempts to flee; inculpatory statements made after apprehension; witnessed participation as a crewman; obviousness of the contraband; or absence of equipment necessary to the intended use of the vessel.

*Vidal-Hungria,* 794 F.2d at 1515; *Cruz-Valdez,* 773 F.2d at 1545–47. This Court met the "mere presence" contention in *Cruz-Valdez* by recognizing:

> [the] deadly hazards implicit in narcotics trafficking, the ever-present risks of robbery or 'rip offs,' the need for strong arm men or guards to safeguard transactions and the almost ritualistic series of precautionary maneuvers that often

**434**

characterize large controlled substance transactions. In light of these familiar realities, we think it reasonable for a jury to conclude that in the course of transporting or distributing millions of dollars worth of readily marketable marijuana, through channels that wholly lack the ordinary protections of organized society, a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders.

773 F.2d at 1547. The Court recently noted in *Vidal-Hungria* that where the quantity of marijuana is less significant, the Government's burden is heavier. 794 F.2d at 1515. *Vidal-Hungria*, however, involved legitimate cargo, as well as marijuana contained within the vessel's sealed compartments.

 In this case, the evidence was sufficient to allow a reasonable jury to find that the crew members knowingly participated in transporting the 165,000–pound cargo of marijuana. Their presence, the large quantity of marijuana, their crew-member status, and the length of the voyage, coupled with the similar acts evidence of each of these four crew members enabled a reasonable jury to conclude that they were knowingly present, rather than present through accident or mistake. This case is unlike the tug-and-barge situation where the Government fails to introduce any evidence beyond mere presence. *See, e.g., United States v. Bland*, 653 F.2d 989, 997 (5th Cir. Unit A), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981). *See also Vidal-Hungria*, 794 F.2d at 1515–16 (total lack of evidence beyond large quantity of marijuana in sealed compartment of freighter carrying legitimate cargo); *United States v. Colindres-Davila*, 804 F.2d 623, 624–25 (11th Cir.1986) (sufficient evidence supporting crew member's conviction where "additional evidence" beyond large quantity of cocaine stored in freighter's water tank).

AFFIRMED.

EDMONDSON, Circuit Judge, concurring:

I concur in the judgment of the court and in most of the court's opinion. In respect

to the marijuana on the High Seas Act issue, however, I would affirm the conviction solely on the narrow ground that the barge Guzzetta 100 was a "vessel of the United States" under 21 U.S.C.A. section 955a(a).